UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA ) | Case No. – 08-CR-35-DCR |
| ) | |
| Plaintiff ) | **DEFENDANT'S SENTENCING MEMORANDUM SUPPLEMENT** |
| ) | |
| VS. ) | |
| ) | |
| KENNETH MULLIKIN ) | |
| ) | |
| Defendant ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now the Defendant, through Counsel, and submits the following Sentencing Memorandum setting forth factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

The Supreme Court in *U.S. v. Booker*, 125 S. Ct. 738 (2005) found the mandatory nature of the Sentencing Guidelines inconsistent with the Sixth Amendment to the U.S. Constitution. *Id*. at 756. Accordingly, the Court directed that the Guidelines be treated as advisory and just one of a number of sentencing factors set forth in 18 U.S.C. §3553(a). *Id*. at 757. The Court in *Rita v. United States*, 127 S. Ct. 2456 (2007), reaffirmed this, noting that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply." *Id*. at 12.

The Court, in *Kimbrough v. U.S.*, 128 S. Ct. 558 (2007), delved deeper into the question of how much deference a sentencing Court should give to the Sentencing Guidelines. In upholding the downward departure given by the sentencing judge, the Court held that when a

guideline is not the product of "empirical data and national experience," *i.e.,* the Commission did not exercise its capacity for expertise, judges have wide leeway to reject the guideline itself as reflecting unsound judgment even in a "mine-run case." *Kimbrough*, 128 S. Ct. at 575.

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language certainly overrides the policy statements in U.S.S.G § 5H1 which direct that a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and a lack of guidance as a youth all be treated as "not ordinarily relevant" to sentencing.

**Application of the Statutory Sentencing Factors
to the Facts of the Case**

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but no greater than necessary, to satisfy the purposes of sentencing.

**1. The Nature and Circumstances of the Offense and the History and Characteristics of the Offender**

Mr Mullikin's prior counsel filed a Sentencing Memorandum that properly describes his history and characteristics. Counsel offer this supplement to touch on a few issues of importance to sentencing.

There is no indication that any sexual abuse occurred in this case. Mr. Mullikin came to the attention of law enforcement while engaged in a chat session with a police agent. While Mr. Mullikin was certainly describing some disturbing imagery in the chat, there is no indication that this was anything for than fantasy chatting. There is likewise no indication that the Defendant

has any history of abusing children or any violent history whatsoever.

The investigation produced no evidence that any images were transmitted in any way nor that there was any commercial motive for the crime.

Mr. Mullikin presents as an unlikely defendant in federal court. He has no history of sexual abuse and a normal sexual history regarding relationships with adult women. Mr. Mullikin has been gainfully employed his entire adult life and has no prior convictions.

There is no indication in the record that Mr. Mullikin has victimized children in his past and little indication that he poses a threat to children upon his eventual release from prison as long as he maintains his counseling and continues to avoid the use of alcohol. Dr. Connor opines that Mr. Mullikin presents a low to moderate risk to act out sexually with a child.

2. **The Need for the Sentence Imposed To Promote Certain Statutory Objectives:**

   (A) **To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense**

   Mr. Mullikin submits that the minimum sentence of 60 months properly reflects the seriousness of this offense, promotes respect for the law and is a just punishment for an offense of this magnitude.

   (B) **To afford adequate deterrence to criminal conduct**

   Again, Mr. Mullikin would argue that the minimum sentence is sufficiently long to provide adequate deterrence.

   (C) **To protect the public from further crimes of the defendant**

>Mr. Mullikin's lack of a prior record and his commitment to his psychological and substance abuse treatment are a good indicator that he poses a low risk to commit further offenses.

>(D) **To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner**

>Mr. Mullikin has performed well in the private sector and probably would not benefit from vocational training. The likelihood is that he would receive better psychological care out of the corrections environment while on supervised release than while incarcerated.

3.  **The Kinds of Sentences Available**

In *Booker*, the Supreme Court severed and excised 18 U.S.C. § 3553(b), the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing guidelines range. *Booker*, 125 S. Ct. at 756. This renders the sentencing guidelines advisory. *Id.;* 18 U.S.C. § 3561; 18 U.S.C. § 3571; 18 U.S.C. § 3581.

4.  **The Sentencing Range Established by the Sentencing Commission**

The maximum term of imprisonment is 20 years, the minimum mandatory sentence is 5 years, pursuant to a violation of 18 U.S.C. §2252(a)(2).

Mr. Mullikin's total offense level is 30. With a Criminal History category of I, his Guideline sentence falls in the range of 97-121 months.

5.  **The Need to Avoid Unwarranted Disparities**

There are no co-defendants in this matter

6.  **The Need to provide restitution to any victims of the offense**

There is no restitution requested in this case.

**Conclusion**

Mr. Mullikin was convicted of this offense after a guilty plea. Congress has seen fit to make this charge punishable by a mandatory minimum 5 years up to a maximum of 20 years. Mr. Mullikin's guidelines call for a sentence of 97-121 months. Mr. Mullikin is requesting the Court to deviate from the Guidelines and impose a sentence 60 months.

*Kimbrough*, when distilled down to its core, basically says that not all Guidelines are created equally. While some Guidelines are the product of the Commission's institutional role, adopted after careful study based on empirical data and past practices, others are cobbled together at the behest of Congress for political reasons as much as practical policy reasons. U.S.S.G. §2G2.1 is one such monster.

In 1997, child pornography offenders received a mean sentence of 20.59 months confinement. *See* Federal Justice Statistics Resource Center, "*Type of sentence for defendants convicted,*" http://fjsrc.urban.org/tsec.cfm. In 2007, defendants sentenced for the same conduct received a mean sentence of 91.30 months. *Id*. This was a 443% increase in the mean sentence imposed for this class of offenders.

In Fiscal Year 2007, the federal courts sentenced 1,256 defendants for child pornography offenses (1,084 defendants pursuant to Guideline § 2G2.2 and 172 pursuant to 2G2.1). *See 2007 Sourcebook*, http://www.ussc.gov/ANNRPT/2007/SBTOC07.htm. While the mean sentence for all defendants convicted of a pornography/prostitution offense was 109.6 months, even first-time offenders received a mean sentence of 102.5 months. *Id*. at Tables 13, 14. This represents a 300+% increase in the typical *imposed* sentence since 1995. Had not 394 defendants, or fully

one-third of those sentenced in FY 2007, received sentences below their applicable guidelines, an even greater increase would have been realized. *Id*. at Table 28.

Congress has focused mainly on §2G2.2 in its directions that the Guidelines for offenders involving child pornography be steadily ratcheted upwards. As related in Troy Stabenow's paper, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, (See attached) the child pornography guidelines have mainly been increased through what Mr. Stabenow terms "morality earmarks." Most of these amendments have been passed without significant discussion and empirical data, when cited, has been the product of flawed methodologies.

One such flawed study was the result of Congress' mandate, in Section 6, Sex Crimes Against Children Prevention Act of 1995 (SCACPA), that the Sentencing Commission was to "submit a report to Congress concerning offenses involving child pornography and other sex offenses against children" within 180 days. *See* Pub L. 104-71. In June 1996. the Sentencing Commission presented a detailed, forty-two page report to Congress. *See* Report to Congress, Sex Offenses Against Children, 1996; http://www.ussc.gov/r_congress/SCAC.HTM.

According to Mr. Stabenow's paper, excerpted below, the following resulted:

> The Commission opened the report by observing "Penalties for sex offenses against children have been increased several times in recent years and are quite severe. Nevertheless, the Commission's analysis indicates that some amendments may be appropriate to increase sentences for the most dangerous offenders, to ensure consistency in sentencing, and to clarify certain provisions that have been improperly interpreted and used." *Id*. at i.
> The primary focus of the report were these "most dangerous offenders." After a review of only 112 child pornography cases, the Commission concluded that "a significant portion of child pornography offenders have a criminal history that involves the sexual abuse or exploitation of children and that those

6

with such histories are at a greater risk of recidivism." *Id*. at i, 3, 29. It was with these particular offenders in mind, and to "ensure lengthy incarceration of the most dangerous offenders" that the Commission "significantly increased sentences for some child pornography offenses," "expanded the definition of a pattern of activity involving the sexual exploitation or abuse of a minor," and recommended that Congress should "increase the statutory maximum for production." *Id*. at i, ii.

These recommendations informed opinion within Congress, and became the basis for further Congressionally directed changes in 1998, 2000, and 2003. It is worth asking, however, whether the data derived from such a small sample size in 1994 and 1995 should still be affecting policy in 2008. Does the information still hold true today? It does not.

We should understand that the 112 cases reviewed by the Commission represented only about one-third of child pornography cases presented for prosecution during that time frame. *See* Compendium of Federal Justice Statistics, 1993, at Table 1.2. In the early to mid 1990s, the United States rarely prosecuted child pornography offenses, selecting only the truly egregious offenders for federal prosecution. *See* H.R. REP. 104-90,1995 U.S.C.C.A.N. 759, 1995 WL 136512 (Leg.Hist.) 759; *see also* Compendium of Federal Justice Statistics, 1993 at Table 1.2. Generic offenders were prosecuted in state court. *Id*.

By 2006, when 1,275 defendants were federally prosecuted for child pornography offenses, generic offenders were routinely prosecuted by federal authorities. *See* Bureau of Justice Statistics Bulletin: "Federal Prosecution of Child Sex Exploitation Offenses, 2006," at page 5; available at http://www.ojp.usdoj.gov/bjs/pub/pdf/fpcseo06.pdf. This rise accompanied the formation of agencies such as the Innocent Images Project in 1995 (56 offices nationwide); the Internet Crimes Against Children Task Force (56 offices nationwide); the National Center for Missing and Exploited Children; and the introduction of local projects such as "Project Safe Childhood," and "Operation Predator."*Id*. at pages 1, 2, 3. While total sex offense prosecutions rose from 431 in 1994 to 2,191 in 2006, an average of 15% growth per year for over a decade, child pornography cases accounted for 82% of the growth in case load. *Id*. at page 1.

Next, the applicability of such a small pool of offenders in 1995 resulted in skewed data. The group studied by the Commission included "a significant portion of child pornography offenders [who] have a criminal history that involves the sexual abuse or exploitation of children."

7

> That group bears little resemblance to the average offender of today. In 2006, 79.9% of child pornography defendants had no prior felonies of any kind, let alone a criminal history of past "sexual abuse or exploitation." *Id*. at page 5. In 2007, only 5% of child pornography defendants were involved in the production of child pornography. *See* 2007 Sourcebook at Table 17.
>
> The net result of these demographic changes is that the defendant towards whom the 1996 report was targeted, the "large-scale, commercial pornographers," and the "most dangerous repeat offenders" have been almost totally replaced. *See* 1996 Report to Congress at pages ii, 28. The generic defendant of today is a first time offender who has never been involved with the production of child pornography.
>
> In 1995, 1998, 2000, and 2003, Congress legislated changes that continue to affect all defendants today. *See* Amendments 535, 575, 592, 649 and 661, U.S.S.G. App. C. These changes modified the Guidelines in an effort aimed at combating the pernicious evil of repeat abusers, pornography producers, and mass distributors. The methodology behind this tinkering, such as it was, can be demonstrated to apply to less than 5% of current defendants. Shouldn't we question continued deference to the established guideline structure for the remaining 95%? Given these facts, and the ability to exercise discretion, would a doctor prescribe medicine based on a decade old medical text, written by well meaning legislators, despite clear evidence that his patient did not suffer from the symptoms the text and medicine were designed to address? For 95% of today's defendants, the applied Base Offense Level and specific offense enhancements are predicated upon a series of premises which do not exist. The prosecution should have to establish the continued applicability of the assumptions underlying the Guidelines in each case. Without a demonstration that the defendant was involved in the behavior targeted by Congress, the only remaining data is that which supported the Base Offense Levels of November 1, 1991. In this environment, respect for the Guidelines should be withheld, and the Court should consider a variance.

Mr. Mullikin was plead guilty and acknowledges that the Court is obliged to sentence him to a stiff sentence. Congress has mandated a minimum sentence of 5 years up to a maximum of 20 years. A review of the Guidelines reveals, however, that very few defendants could ever receive a minimum sentence.

As most offenders either sell or trade the images as well as engage in concurrent sexual abuse of the victims, it is the rare offender who does not reach an offense level of 40 or higher.

Mr. Mullikin appears to be a defendant who would respond well to treatment and, as a first time offender, his incarceration will have a greater impact on him than a career criminal. As noted earlier, the images involved in this case were not distributed, and there is no evidence that Mr. Mullikin has ever sexually acted out with a minor child. Mr. Mullikin has no history of violence or sexual crimes and he has criminal history.

For the foregoing reasons, Mr. Mullikin requests this Court to deviate from the Guideline range and sentence him to 60 months.

Respectfully submitted,

/s Dennis C. Alerding_____
DENNIS C. ALERDING
ATTORNEY AT LAW
303 GREENUP STREET
SUITE 300
COVINGTON, KY 41011
(859) 431-8100

CERTIFICATION

I hereby certify that a copy of the foregoing Motion was filed electronically and transmitted to AUSA's Anthony Bracke and Jason Denney on this 20th day of January, 2009.

/s Dennis C. Alerding_____
DENNIS C. ALERDING