UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

CRIMINAL ACTION NO. 2: 09-35-DCR            *ELECTRONICALLY FILED*

UNITED STATES OF AMERICA                                              PLAINTIFF

V.         RESPONSE OF UNITED STATES TO
           DEFENDANT'S SENTENCING MEMORANDUM

KENNETH MULLIKIN                                                     DEFENDANT

\* \* \* \* \*

Comes the United States of America, by counsel, and responds to the Defendant's most recent Sentencing Memorandum [R. 56]. The United States respectfully requests the Court consider this response, given the timing of the Defendant's memorandum in such close proximity to the sentencing hearing.

The Defendant's analysis under 18 U.S.C. § 3553(a) is flawed in several respects. In addressing the nature and circumstances of the offense and the characteristics of this defendant pursuant to 3553(a)(1), he points out that "there is no indication that any sexual abuse occurred in this case....there is likewise no indication that the Defendant has any history of abusing children or any violent history whatsoever." [R. 56, p. 2-3]. Sexual abuse most certainly occurred in this case, as the victim impact statements clearly demonstrate. That the Defendant did not commit hands-on child molestation says nothing of the harm he did cause by the crime he did commit. Receiving and possessing images

of child sexual exploitation is a distinct and egregious form of abuse that is worthy of punishment in and of itself.  As individuals like the Defendant collect these illegal images, they exploit the children in the images.  As they trade them among other like-minded individuals, they reinforce the concept that sexual attraction to children is normal and acceptable.  As they establish contacts and networks to facilitate the trade and transmission of these images, they contribute to the market demands for more product.  And as the demand increases, so does the hands-on child abuse.  This Defendant was most certainly part of at least one such depraved network, using the screen name "LuvEmYung" to chat explicity with others about child abuse in rooms such as "baby&toddlerlove," "pedomoms," and "dad&daughtersex."  He reached out to others, knowingly received contraband images, and thereby contributed to the child pornography market.  This Defendant, and all those who collected that child pornography, exploited and victimized the children in those images.

Under the same auspices of 3553(a)(1), the Defendant points out that there is "no evidence that any of the images were transmitted in any way," and that "Mr. Mullikin presents as an unlikely defendant in federal court." [R. 56, p. 3].  The images in this case were certainly transmitted in interstate commerce, as the Defendant admits in the factual basis of the plea agreement.  Also, as found in the PSR, the Defendant received the images over the internet while engaging in disturbing chats with like-minded individuals.  As such, he directly and personally participated in the market, regardless of whether he sent an image to anyone else.  Likewise, this Defendant is not substantially different from any other child pornography Defendant seen by this Court.  This class of offenders rarely

has substantial criminal history, and their crimes largely depend on having a stable outside environment so that they can trade in contraband in the privacy of their homes.

Next, the Defendant argues that the statutory minimum sentence of 60 months would promote the statutory objectives at 3553(a)(2).  That would be approximately half the imprisonment recommended by the guidelines, but the Defendant offers no correspondingly strong justification for such a downward variance.  The Defendant's apparent intention to argue that he is "merely a picture collector," as opposed to hands-on child abuser, does nothing to diminish the seriousness of the offense.  Congress has found that the individuals who collect these images are affected by the real abuse they portray: "child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites ...; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer". *Omnibus Consolidated Appropriations Act of 1997*, PL 104-208, § 121 (September 30, 1996) 110 Stat. 3009-26.  Trafficking through the internet, as this Defendant did, allows offenders to operate in a virtual world of like-minded individuals.  Members of this network communicate to each other that sexual attraction to children is acceptable, and further, that acting on the attraction is common. This message, conveyed through the images themselves, encourages further child abuse.

Not only is the offense serious in this generalized way, but the particular images possessed by this Defendant underscore the harm.  They included prepubescent children being raped, sadistic and masochistic images of violence, and they numbered well over

the highest category recognized by the guidelines (704 still images, and 98 videos, for a total of 8054 images under the guidelines, whereas 2G2.2(b)(7)(D) recognizes a cutoff of only 600 images to trigger the greatest enhancement). This Defendant's offense was indeed a serious one, and a just punishment must include more than the statutory minimum given these particular circumstances.

Likewise, the extremely low sentence requested by the Defendant will not provide adequate deterrence. Congress is entitled to, and did, conclude that sentences influence behavior. The Defendant's unsupported conclusion regarding the sufficiency of the statutory minimum tells us nothing regarding the *general* deterrence this Court can achieve by imposing a lengthy sentence.

Lastly, the Defendant apparently disagrees with the relevant sentencing guideline itself, relying instead upon an article by an Assistant Federal Defender in Missouri. This Court should decline the invitation to question the guideline itself, and instead give it the careful consideration it deserves under 3553(a)(4). First, this Court has no obligation to evaluate the Commission's motives and processes when it promulgated a particular guideline section. "Even if it were true that district courts, based on the reasoning of *Kimbrough*, may impose below-guideline sentences for child pornography offenses solely based upon policy disagreements with those guidelines, such does not entail that they *must* do so." United States v. Mikowski, 332 Fed.Appx. 250, 256 (6th Cir.2009) (unpublished opinion). *See also* United States v. Mondragon-Santiago, 564 F.3d 357, 367 (5th Cir.2009) ("In appropriate cases, district courts certainly may disagree with the Guidelines for policy reasons and may adjust a sentence accordingly. But if they do not,

we will not second-guess their decisions under a more lenient standard simply because the particular Guideline is not empirically-based.").

More importantly, however, there is no genuine cause to question § 2G2.2. It is the product of the Commission acting in its characteristic institutional role. "The Commission has sought to implement congressional intent in the area of child pornography offenses in a manner consistent with the [Sentencing Reform Act] and subsequent legislation. . . in amending the child pornography guidelines over the years, the Commission has reviewed sentencing data, considered public comment on proposed amendments, conducted public hearings on proposed amendments, studied relevant literature, and considered pertinent legislative history." United States Sentencing Commission, *The History of the Chid Pornography Guidelines*, at p. 7, found at http://www.ussc.gov/general/20091030_ History _Child_Pornography_Guidelines.pdf. The empirical analysis of past sentencing practices was but one factor in the Commission's decisionmaking process, and appropriately so: "Rather than choose among differing practical and philosophical objectives. . . the Commission took an 'empirical approach,' *beginning* with an empirical examination of 10,000 presentence reports" and then "modifying and adjusting past practice in the interests of greater rationality, avoiding inconsistency, *complying with congressional instructions and the like.*" Rita v. United States, 551 U.S. 338, 349 (2007) (emphasis added).

Congressional involvement in the formation and development of the Sentencing Guidelines is not only intended but proper. Congress, indisputably, has the power under Article I, Section 8 of the United States Constitution to set penalties for criminal offenses.

As the Supreme Court observed, Congress holds power to "fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control." Mistretta v. United States, 488 U.S. 361, 363 (1989). The mere presence of Congressional involvement in a Guideline's development does not render that Guideline somehow worthy of less weight. After all, it was Congress that in "instructing *both* the sentencing judge *and* the Commission what to do, [] referred to the basic sentencing objectives that the statute sets forth in 18 U.S.C. §3553(a)." Rita, 551 U.S. at 348.

§ 2G2.2 was promulgated in 1987 and has been revised 9 times. *The History of the Child Pornography Guidelines* at 54. It is the product of extensive review by the Commission and Congress, both of which have the capacity to hold hearings, seek advice from experts, debate issues, and prepare reports. In promulgating § 2G2.2, the Commission thoughtfully considered how to comply with the statutory minimum directives of Congress, and set relatively low base levels because some enhancements would apply in nearly every case. *Id.* at 47-48. Further, the § 2G2.2 enhancements are in parity with other Guideline enhancements. For example, the child pornography Guideline provides enhancements based on the number of images. This is not novel: "The drug, explosives, and gun guidelines also provide for higher sentences based on the volume of contraband involved, and the fraud and theft guidelines recommend higher sentences in cases with larger losses." *Id.* at 12. Further, the enhancement for sadistic and violent images, "echoes enhancements found throughout the guidelines which apply depending on the severity of physical injury to the victim." *Id.* (citing U.S.S.G. §§2A2.1

assault, 2A3.1 sexual abuse, 2A4.1 kidnapping, 2B3.1 robbery, 2B3.2 extortion).

The Defendant has requested an extreme variance from the guideline range, yet offered no corresponding justification.  3553(a)(4)(A) counsels that this Court should carefully consider the range established under the guidelines, and (a)(6) requires us to avoid unwarranted sentencing disparities.  Nothing about the range calculated in this case, or the characteristics of this Defendant, justifies the disparity that would be created by his requested sentence.  Imprisonment for the statutory minimum would effectively ignore all of the aggravating factors taken into account by the guidelines.  This Defendant is squarely in the heartland of what Congress and the Commission intended to punish severely, and this Court should exercise its discretion to do so.  Accordingly, the United States respectfully recommends a sentence within the guideline range, to be followed by lifetime supervised release.

    Respectfully submitted,

    JAMES A. ZERHUSEN
    UNITED STATES ATTORNEY

By:    s/ Jason A. Denney
    Assistant United States Attorney
    207 Grandview Drive, Suite 400
    Ft. Mitchell, Kentucky 41017
    (859) 652-7034
    jason.denney@usdoj.gov

**CERTIFICATE OF SERVICE**

On January 12, 2010, I electronically filed the foregoing document through the CM/ECF system, which will provide notice of the filing to the following counsel of record:

Dennis C. Alerding, Esq.

s/ Jason A. Denney
Assistant United States Attorney